and call the case People v. Darnielle Fox. So please step up and identify yourselves. Good morning, your honors. My name is Carl Monk. I'm with the Office of the State Appellate Defender, and I represent Mr. Fox. Good morning. Assistant State's Attorney Norm Montague on behalf of the People. Okay, you guys basically know our procedure, and since there's only the one case, we'll leave you some latitude. This case has some open doors that aren't normally there. I think we all kind of agree about the Howard case, but when you get to Hunter, there's some questions as to what they did and didn't answer. So I would ask you guys to hone in on what Hunter did or didn't, because I think, I shouldn't say this, but Hunter was not written really, it didn't close all the doors. It was like a partial opinion. So with that in mind, I say, go to it. And good morning, your honors, and may it please the court. You're absolutely right, Justice Fitzgerald-Smith. Howard and Hunter don't answer all of the questions present in this case, but I believe Howard answers most of them. In this case, the legislature amended the automatic transfer statute while the proceedings were pending in the circuit court for Mr. Fox, which is very similar to what happened in Howard. And Howard explained that because the amendment was procedural, Section 4 of the Statute on Statutes dictates that it applies to ongoing proceedings, and there were ongoing proceedings in the circuit court in this case. So Howard, on its face, seems to indicate that the amendment would apply to Mr. Fox's case. In Howard, the limitation they identified was that it be so far as practicable. Now, in Howard, they went on to explain that that just means capable of being put into practice. Is it feasible? And in that case, they answered, yes, it's clearly feasible to hold the transfer here. And our position is that also holds true in this case. Now, the state argued that Hunter applied and not Howard applied, and that is incorrect because in Hunter, the effective date of the amendment to the automatic transfer statute went into effect while the case was on direct appeal after it was already final in the circuit court. Whereas Howard, unlike this case, the case was pending in the circuit court on the effective date of those amendments. And that's a crucial distinction between Howard and Hunter, and that's what we need to focus on in terms of the analysis of the two different cases. Now, the state, aside from that distinction, the state makes an argument that it would not be feasible to send this case back for a transfer hearing because Mr. Fox is now over 21 years old. And the state relies on the part of Hunter where they explain that the juvenile court no longer has jurisdiction over people who are over 21. Which is a bad word. It is a bad word. It's one of those words that it's often used to refer to authority, a court's authority. That's what they usually use. And, yes, it gets particularly confusing, especially since the Supreme Court's recent decision in Casselberry where they went to great lengths to explain exactly what jurisdiction is and exactly what it means. And so in terms of that statement in Hunter saying that there's no jurisdiction, that simply cannot be true under Illinois law. Well, if we excuse for a moment the perhaps misuse of the term jurisdiction and consider that the court's maybe a better word might have been procedure. Or authority. Or authority. Let's forgive the use of jurisdiction as that being a factor upon which we can distinguish Hunter in this case. Sure. Well, I think another way to distinguish it in Hunter, that discussion about the feasibility because he's over 21 was in the context of whether they would apply the statute retroactively to a case on direct appeal. Let me beat through that. I think we know that. That Hunter says that. And we know what Howard says. But our case is neither. Our case is a resentencing because of an error at some point. Therefore, my question is, does resentencing revert back to and pull it within the original sentencing, which would then make the case still before he was 21? And then what do you do with it? I would respond, Your Honor, that this was not merely a resentencing because of an error. Mr. Fox's sentence was unconstitutional. And his entire sentence was vacated because it was unconstitutional. So that was like either Ford or Brown? That was closer to Brown where the transfer statute in that case was unconstitutional under Cervantes. And I think that's an important distinction because this is not merely a procedural error at sentencing where he had a sentence and they just had to go back and fix it. At the time the amendment went into effect, Mr. Fox had no sentence. He had been convicted, but he had not yet been sentenced, which is exactly the same situation as the people in Howard. They had been convicted but not yet sentenced. In Mr. Fox's case, there was no final legal judgment against him on January 1, 2016, because his sentence was unconstitutional and had been vacated by the trial court. So at that time, his case was pending in the circuit court as if he had never been sentenced. And I think that's an important fact for this Court to remember. And back to the discussion about authority. Yes. Well, couldn't you say that a post-conviction petition is not a trial. It's an independent proceeding and, therefore, it's not a trial proceeding at all. Although the sentencing has to be redone, it's not really part of the actual trial. It's the consequence of a separate procedure. I mean, that is how it got here in this case. It was pursuant to post-conviction proceedings. However, his sentence was unconstitutional. And the sentence in the statute was unconstitutional under Miller. And we know that when the whole statute is unconstitutional, it's as if it had never happened. So he, Mr. Fox, never had a valid sentence. From the time he was imposed, his sentence was unconstitutional. And when the Court vacated the sentence in the entirety in 2015, that means on January 1, 2016, Mr. Fox did not have a sentence against him. There was no final judgment in his case as a result of that. And going back to the discussion of authority, if we put aside the perhaps unhelpful use of the word jurisdiction and look at authority, there are cases where the Illinois Supreme Court has remanded cases back for additional proceedings under the Juvenile Court Act for defendants who are over 21 years of age. In both Brown and Ford that are referenced in Hunter, in both of those cases, the Supreme Court remanded the proceedings back or proceedings under the Juvenile Court Act for defendants who are over 21 years of age. Now, in Hunter, the Court explained why it believed those cases were distinguishable. For Brown, the Court noted that, well, the issue of the defendant being over 21 wasn't explicitly raised by anyone in that case, so they didn't consider him. However, in that case, there was lots of litigation. There was a huge fight between the parties. And the Court spent much of its time in the decision explaining what statutes did apply under remand. So it wasn't like the Court never thought about what would happen when it goes back. The Court spent a lot of time trying to decide what statutes were appropriate to apply under remand. And as the Court has pointed out repeatedly, the Court has its own – it's obligated to consider its own jurisdiction. And so I think when the Court spends that much time considering statutes, if the Court believed it couldn't do that, it's unlikely that it would have remanded for that. And then similarly in Fort, there was a somewhat different situation in that it was a – he was charged with an automatic transfer offense, but ultimately convicted of a non-automatic transfer offense. And so in that situation, the Juvenile Court Act requires the state to file a petition in order to have the defendant sentenced as an adult. And in Fort, they – the Supreme Court said that his adult sentence was improper without the filing of that petition. And so they remanded it back for the state to file that petition. In Hunter, they explained, well, he sends it back to the adult court. Now, that's inaccurate for two reasons. One, as numerous cases have pointed out, and Luis R., five actually of those, adult court and juvenile court are not different courts. It's all the circuit court. They're simply different divisions of the circuit court, and the question really is just which statutes are being applied in that proceeding. And also in Fort, when they said they send it back for adult court, again, we know this is what division he was in. They send it back for the state to file a petition pursuant to the Juvenile Court Act. So they were holding proceedings under the Juvenile Court Act for a defendant who was over 21, and the defendant's age was litigated extensively by the parties. In the briefing, they both argue how it applies, and the Supreme Court basically doesn't acknowledge that at all in its decision. So it just seems a little incongruous that in 2017 in Fort, when this issue of a defendant being over 21 is raised to the court, they say nothing about it. And then in Hunter, they make this statement that it's sort of hard to square with the prior decisions in the Illinois Supreme Court on how age applies. They were trying to cover themselves? I mean, it's not necessarily how or why they arrived at the decision they did, but when you try to read Hunter with the other decisions, it becomes difficult at times to understand exactly what they were. Well, I want to go back to what Counselor Justice had asked you about the PC. What alternative way would they have of getting that case back before the court other than a PC? I mean, had they any other option? I mean, I guess. Maybe that's the only way. So is it really a PC? I mean, it was pursuant to post-conviction proceedings. He had a post-conviction that was pending, and then Miller and Adolfo Davis came down, and his attorney went, Your Honor, I think we need to do something with these cases, and the parties all kind of agreed, yeah, okay, we need to have a new sentencing hearing. It appears that the judge essentially granted his post-conviction claim, but it's not entirely clear procedurally how he got there other than everybody sort of agreed after Miller and Davis, Mr. Fox was entitled to a new sentencing hearing. So the parties sort of proceeded on that. Yes, we have to do this, and so that's the route they went. And as I stated, in terms of whether the amendment applies, I don't think the fact that we got there through collateral proceedings has any impact on that because in Howard they explained the question is are there ongoing – sorry, in Hunter they explained are there ongoing proceedings in the circuit court, and in this case there definitively were, and he had no valid sentence at the time because it had been declared unconstitutional. If there are no further questions on that, I'll briefly touch on the second issue, Your Honors. In this case, Mr. Fox was resentenced to 73 years in prison, and after the resentencing, the court's comments seemed to focus heavily on deterring others from committing crimes like this, and as the United States Supreme Court and this court and people via NATO emphasized, deterrence doesn't work for juveniles, and so the court's emphasis on that point sort of skewed the balance away from the proper consideration of achieving rehabilitation, and in that same time, the court seemed to give little weight to the substantial evidence and mitigation about Mr. Fox's childhood and his behavior in the Department of Corrections throughout that time. So would you consider him irretrievably deprived? I would not, Your Honor, and I believe the evidence that came out of this hearing demonstrates that he is not. In fact, his behavior in the Department of Corrections while he's been there establishes that he's not been a problem. He's actually been extremely well-behaved. He's participated in all of the programming he's been allowed to participate in over the years, and he's not been a behavioral problem. He hasn't been causing any problems in the Department of Corrections, and I think that shows that he's not the same 15-year-old as when this offense occurred. He's grown up and over the years has matured and has perhaps changed his ways. And for those reasons, Your Honor, we would ask this court to remand for a transfer hearing or alternatively for a new hearing, for a new sentencing hearing. Thank you. Thank you. Good morning. May it please the court, Assistant State's Attorney Noah Montague on behalf of the people in this room. Say your name again. Noah Montague. Okay. He's saying it too fast. Your Honors, this case is before the court because this defendant was convicted of murdering two people and shooting two other people in 1997 when he was 15 years old. He was tried and convicted in criminal court according to the laws in place at the time. Years later, he filed a post-conviction petition, and in 2015 the court vacated his sentence. He was resentenced in 2016 when he was 35 years old. In 2016, the provision which originally placed him in criminal court was amended by the Illinois General Assembly. The age at which he qualified was raised from 15 to 16, and the defendant obviously is now saying that that should apply retroactively to his case. It's important, though, before we get knee-deep in retroactivity to consider and remember that this is an ineffective assistance of counsel claim. This is not a case where the defendant filed a motion for this provision to be applied to him retroactively and the court denied his motion and the court's judgment is then judged in light of cases which come after it. In fact, it's the opposite because the beginning of an ineffective assistance of counsel claim must be looked at from a point of view of the attorney at the time. And that attorney at the time had never seen the decision in Howard because it hadn't been made yet. That attorney had never seen the decision in Hunter because it hadn't been made yet. And, in fact, according to the people's research, as best we can tell, there was no decision, even from this court, on the retroactivity of 5-130 as it was amended in 2016 because the sentence was handed down on June 6, 2016. I believe the first decision that came out of any court was from this court's decision in People v. Patterson, which was June 24, 2016. So it was close, but there was no decision at that time for that attorney to say, I should know that this thing applies retroactively to my client. And that goes, too, as well, when you consider all the factors involved in that attorney's decision. You consider the 5-130 itself. Well, 5-130A, which is what they're alleging should apply retroactively, only dictates where the charges should be filed and that all related charges should be tried in criminal court. But then if you look down, B and C deal with contingencies of what happens after trial. C, in particular, says if you're convicted of one of these enumerated offenses, you're sentenced under the criminal code. Now it says 5-4.5-105. C2 says if you're convicted but not for the reason that brought you into court, first it says that that conviction is not invalidated. It explicitly says that. But second, it then says the state has 10 days to file a motion. Well, obviously, the state couldn't file a motion that was due in 1999 in 2016. And then it's also, though, important to consider that this attorney, when considering whether or not to file such a motion, as defendant now says he should have filed, defendant is saying that he was entitled to a transfer hearing under 5-805 of the Juvenile Court Act. 5-805 explicitly says you can only hold such a transfer hearing before trial. And again, the trial occurred in this case in 1999. So how could a circuit court in 2016, even considering the retroactivity, say that a law which explicitly says you can only hold this transfer hearing before trial, hold such a transfer hearing 18 years or whatever it was after the trial? That circuit court simply does not have the legal authority to do something 18 years after trial when the Illinois General Assembly has explicitly told the circuit court you can only do this before trial. The circuit court doesn't have, you know, one of the key pieces of statutory construction in the state of Illinois is that you cannot read exceptions and conditions into a statute which aren't there. There's no exception in 5-805 that says, well, if something strange happens and a person comes back up for resentencing 20 years later, then you can just forget about some of these terms. Counsel's arguing that because the sentence was unconstitutional, it's void ab initio, and this resentencing is essentially part of his original trial because there was no final judgment at that point. It was void, and that this resentencing was part of the trial. That's what the trial was. And, Your Honor, even if that point is granted, it doesn't make it non-perturbed. It doesn't erase the 20 years that went by. I'm fudging the years. It's 18 or 17 or something. I'm sorry. I'm just not doing the math because I'm thinking about something else. But it doesn't make the sentencing hearing in 2000, I believe, is when he was originally sentenced. The resentencing hearing is still taking place in 2016. And if it wasn't, well, then the amended 5-130 wouldn't apply. So it can't be non-perturbed when a defendant wants it but not non-perturbed when he doesn't. One set of laws applies to this case, and Hunter is the thing that has said what set of laws applies. And it's important to look at Hunter in not just the part on ongoing proceedings because obviously this case is different from Hunter in that regard. And, you know, the state would still argue that the ongoing proceedings, the way the court defined what is an ongoing proceeding is not applicable to this case. But we don't even need to get to that part because the court stated a second independent reason for its ruling, and it stated that it is impracticable to apply the Juvenile Court Act to a person who is 22 because of the Juvenile Court Act's explicit applicability to only people that are 21 and under according to its prior holding in 5-. And obviously the explicit, well, 5-120 says 18 but then the definition of what is a minor says up to 21. So under this explicit ruling by the Illinois Supreme Court, it is a compelling reason to say that this circuit court in this case had no legal authority to apply the Juvenile Court Act here. And, in fact, what the Supreme Court said was that under the statute on statutes, the applicability, retroactive applicability of procedural statutes is limited by two reasons. One is whether there's ongoing proceedings, but the other is its practicability. And, again, with the practicability, it's not just the 21-year age limit. It's also what I just said a minute ago, which is that he's asking for a 5-805 transfer hearing. That hearing explicitly says it's only allowed before trial. So this circuit court in this case cannot ignore that and just say I want to give you a hearing. So what was the procedural posture in Fort? In Fort, the case didn't involve an amendment. In Fort, what happened was the defendant was convicted of second-degree murder, and the court held that, well, you were charged with first-degree murder. Second-degree murder is a separate offense because it has an extra element. And so it said that 5-130C2 should have applied and that the parties were all in error for failure to recognize that it applied. So the court sent it back to adult court, the criminal court, and said to apply that provision. And that is the procedure that should have applied. And what the court said was that you should go back and do it now. And then they dismissed it. I don't know, honestly. No, I'm just reading it. Oh, yeah, yeah. No, it said that if you don't grant the motion. Which shocks me because the question is what do you do if you send it back there if they have no authority? Well, that would be exactly what would come of this case because the circuit court, if it granted any such motion, would then have no ability to do what the defendant was asking it to do. So what else could happen to the case? And this defendant, you know, it should be recalled that this defendant, you know, murdered two people. That's an extraordinarily serious offense. And to just throw the case out is remarkably and more importantly it's not at all what the Illinois General Assembly intended. And one reason you can see that is the Illinois General Assembly amended these provisions, these Juvenile Court Act provisions to make them more lenient, to make sure that people consider different factors that go into sentencing. But if you look at what this defendant would have been sentenced to under the Juvenile Court Act as it states now, 5-4.5-105, for two murders and two aggravated batteries with a firearm, he was facing, and this is without the firearm enhancements, a minimum of 52 years, 50 of which would have to be served because under the modern statutes, 100% of each of those 20-year murder convictions would have to be served. And 85% of each 12-year conviction or the total 12 years for the two aggravated batteries would have to be served. So that's roughly 50.2 years. This defendant, by virtue of his attorney's smart decision, chose to be sentenced under the sentencing provisions in place in 1997, which by a weird loophole, the truth in sentencing provisions had been invalidated by the single subject provision. And so there was no truth in sentencing back then. Now, in your brief, you argue just one prong of effective assistance. You argue prejudice. You don't argue the first prong. That's correct. But you do it today for the first time in oral. Yes, Your Honor. Yes. All right. And I would simply just make the point that this, you know, it's an important aspect of this case, regardless of whether this court even considers the argument I'm making now, that it is not a review of judicial error or alleged judicial error. It is a review of an attorney's decision made in real time. And it's the State's position that that decision made in real time was one that was beneficial to the defendant and one that was extraordinarily reasonable in light of what the attorney knew. On issue two for the sentencing, the State would simply maintain that this defendant was properly sentenced under Illinois law. Illinois law allows courts to consider deterrence as a factor, and the court considered it properly here. This sentence was perfectly in line with the statutory guidelines and was a reasonable sentence in light of the extraordinarily serious and grave offense that was committed here. For those reasons, then, we'd ask you to affirm this defendant's conviction. Thank you. Thank you. Pause for a minute. I just want to apologize. I had to leave the bench because I have a daughter that's in and out of the hospital, and things aren't going well. So I will listen to the tape. Plus, I have my attorney back there that's taking notes. So I just wanted you to know I'm sorry that happened. That's not happened before, although she's been in and out of the hospital before. Go ahead. I have just a few brief points, Your Honors. In response to the State's argument that the statute says that a transfer hearing is required to happen before trial, yes, the statute says that. However, in Howard, the court ordered transfer hearings for all of these children after their trial had happened. That's the problem with retroactivity. When you look at something, obviously we're saying at a later date, well, now this happens through something that happened before. And that's one of the problems that Your Honor identified in this case, is we have statutes that sort of could have never anticipated a situation like this, where many years later they've changed the law about a procedure and none of it should happen. And that's confusing. But as the Supreme Court said, the General Assembly amended the statute with the intent that it apply. Is the practical effect of what you're seeking to have the court do a release of this defendant? I mean, that would just be it. I mean, at this point, it's simply he does not have a valid transfer, and the law that applies to him says he doesn't have a valid transfer. Well, but he goes back, if the hearing is permitted in the juvenile court and get back to juvenile court, understood it's a division, and they have no authority because he's now 36, is the practical effect release? That is certainly an option. If it's agreed that he doesn't have a valid transfer without the juvenile court act, but the juvenile court act cannot hold a transfer hearing, then it seems that discharge would be the only result. And that's, I mean, it's important. Those are part of the issues we're trying to deal with here, is what did the General Assembly mean when they amended the statute? What did the Supreme Court mean when they said this? And how do we reconcile all of these things? And the statutes in the case law are not exactly clear on what the right answer is, and that's frankly why we're here today, I think. But we have to keep in mind that the General Assembly amended the statute, and as the Supreme Court said, with the intention that it apply to these kinds of situations. So now Mr. Fox has a right that the General Assembly granted to him by virtue of the way they amended this statute, and we're simply trying to figure out how do we effectuate that, the intent of the General Assembly in this case. And then my other point was, as your Honor pointed out, the state did not argue on a reasonable performance in their brief. They're arguing now for the first time. But in addition to that, counsel focused on the fact that there had been no court decisions about this issue at the time counsel did this. A lawyer practicing in trial court is expected to know the law, to know statutes, to know what happens with their client's case, even if there may not be a reviewable decision directly on point on that particular issue. And these amendments to the juvenile statutes did not come out of nowhere. There was a lot of publicity about them, particularly in the circuit courts of Cook County. There was a lot of knowledge that these had happened, and there was sort of a lot percolating about how to deal with them. So it would be hard to believe that counsel had no idea that the statute had been passed. But how do you address what the state pointed out, that the change did not occur until after, did not, in effect, affect him at the time he was in the court, trial court, meaning that his attorney was unaware of anything. He would not be aware of what occurred. It hadn't occurred yet. I guess I don't understand your question. What had not occurred when? The change in the statute was not, unless I'm wrong, I thought counsel said the first case on that was subsequent. It wasn't.    Why was the change in the statute not after? The reviewing court decisions about it came afterwards, but the effective date of the statute was January 1st, 2016. And other parties in the circuit court were well aware that January 1st, 2016 was the effective date of the amendments to the statute. All right. Good answer. If there are no further questions, Your Honor, thank you. Well, thank you both. You both argued well, and I will listen to the tape. Again, I apologize. And the briefs are well done. This is actually a much more interesting case than when we originally put it on. So it was fun for us to go through and see what is or isn't on the books clearly. Thank you.